**FILED**

**APRIL 29, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

A CERTIFIED TRUE COPY
ATTEST

By April Layne on Apr 09, 2008

FOR THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**CORRECTED**

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

**Apr 09, 2008**

FILED
CLERK'S OFFICE

FILED: APRIL 09, 2008
08CV2369          CEM
JUDGE COAR

IN RE: AQUA DOTS PRODUCTS
LIABILITY LITIGATION

MDL No. 1940

**TRANSFER ORDER**

**Before the entire Panel**[*]: Defendants Spin Master Ltd. and Spin Master, Inc., initially moved, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings of this litigation in either the Northern District of Illinois or Eastern District of Arkansas. All responding parties agreed that centralization is appropriate and variously supported selection of either of these two districts or the Central District of California as transferee forum. At oral argument, movants and plaintiffs informed the Panel that all responding parties now agree that the Northern District of Illinois is the most appropriate transferee district for this litigation.

This litigation presently consists of seven actions listed on Schedule A and pending in six districts as follows: two actions in the Central District of California and one action each in the Eastern District of Arkansas, the Southern District of Florida, the Northern District of Illinois, the Western District of Missouri, and the Northern District of Texas.[1]

On the basis of the papers filed and hearing session held, we find that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Northern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions share factual questions relating to the (1) design and manufacture of Aqua Dots, and/or (2) the adequacy of the November 2007 voluntary recall of this product. Centralization under

---

[*] Judge Scirica took no part in the disposition of this matter. Another Panel member who could be a member of a putative class in this litigation has renounced his participation in this class and has participated in this Panel decision.

[1] The Panel has been notified that two other related actions have recently been filed, one action each in the Northern District of Illinois and the Western District of Kentucky. These actions will be treated as potential tag-along actions. _See_ Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

A TRUE COPY-ATTEST
MICHAEL W. DOBBINS, CLERK
By s/WILLIE A. HAYNES
DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS
DATE: APRIL 28, 2008

- 2 -

Section 1407 will eliminate duplicative discovery; avoid inconsistent pretrial rulings–especially on the issue of class certification; and conserve the resources of the parties, their counsel and the judiciary.

We further find that the Northern District of Illinois is an appropriate transferee district for this litigation, because (1) the Illinois district is relatively conveniently located in relation to documents and witnesses located at Spin Master Ltd.'s Canadian headquarters, and (2) all parties now agree upon centralization in this district.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Northern District of Illinois are transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable David H. Coar for coordinated or consolidated pretrial proceedings with the action pending there and listed on Schedule A.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

D. Lowell Jensen          J. Frederick Motz
Robert L. Miller, Jr.     Kathryn H. Vratil
David R. Hansen           Anthony J. Scirica*

**IN RE: AQUA DOTS PRODUCTS LIABILITY
LITIGATION**
                                                          MDL No. 1940

### SCHEDULE A

      <u>Eastern District of Arkansas</u> - 08cv2367

Donald C. Erbach, Jr., et al. v. Spin Master, Ltd., et al., C.A. No. 4:07-1112

      <u>Central District of California</u> - 08cv2368

Kim A. Cosgrove v. Spin Master, Ltd., et al., C.A. No. 2:07-7544
Sandra Irene Soderstedt v. Moose Enterprise Pty Ltd., et al., C.A. No. 2:07-7546

      <u>Southern District of Florida</u> - 08cv2369

Simon Bertanowski, et al. v. Moose Enterprise Pty Ltd., et al., C.A. No. 1:07-22941

      <u>Northern District of Illinois</u>

Robyn Williams v. Spin Master, Ltd., C.A. No. 1:07-6387

      <u>Western District of Missouri</u> - 08cv2370

Michael J. Burgess v. Spin Master, Ltd., C.A. No. 3:07-5110

      <u>Northern District of Texas</u> - 08cv2371

Eric K. Botsch v. Spin Master, Inc., et al., C.A. No. 3:07-1948

CLOSED, CMM, STAY

**U.S. District Court**
**Southern District of Florida (Miami)**
**CIVIL DOCKET FOR CASE #: 1:07-cv-22941-AJ**
**Internal Use Only**

Bertanowski et al v. Moose Enterprise Pty Ltd.          Date Filed: 11/09/2007
Assigned to: Judge Adalberto Jordan                     Jury Demand: Plaintiff
Cause: 28:1332 Diversity                                Nature of Suit: 370 Fraud or Truth-In-
                                                        Lending
                                                        Jurisdiction: Diversity

**Plaintiff**

**Simon Bertanowski**                  represented by   **Adam Mark Balkan**
                                                        Balkan & Patterson
                                                        601 S Federal Highway
                                                        Suite 302
                                                        Boca Raton, FL 33431
                                                        561-750-9191
                                                        Fax: 750-1574
                                                        Email: tiffany@balkanpatterson.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Elizabeth A. Shonson**
                                                        Coughlin Stoia Geller Rudman &
                                                        Robbins LLP
                                                        120 E Palmetto Park Road
                                                        Suite 500
                                                        Boca Raton, FL 33432
                                                        561-750-3000
                                                        Fax: 750-3364
                                                        Email: eshonson@csgrr.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jack Reise**
                                                        Coughlin Stoia Geller Rudman &
                                                        Robbins LLP
                                                        120 East Palmetto Park Road
                                                        Suite 500
                                                        Boca Raton, FL 33432
                                                        561-750-3000
                                                        Fax: 750-3364
                                                        Email: jreise@csgrr.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**James Lee Davidson**
Coughlin Stoia Geller Rudman &
Robbins LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
561-750-3000
Fax: 561-750-3364
Email: jdavidson@csgrr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Bledsoe Patterson**
Balkan & Patterson
601 S Federal Highway
Suite 302
Boca Raton, FL 33431
561-750-9191
Fax: 750-1574
Email: john@balkanpatterson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John J. Stoia, Jr.**
655 West Broadway
Suite 1900
San Diego, CA 92101
US
619-231-1058
Fax: 619-231-7423
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Jeffrey Geller**
Coughlin Stoia Geller Rudman &
Robbins LLP
120 E Palmetto Park Road
Suite 500
Boca Raton, FL 33432
561-750-3000
Fax: 561-750-3364
Email: pgeller@csgrr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel L. Jensen**
655 West Broadway
San Diego, CA 92101
US

619-231-1058
Fax: 619-231-7423
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart Andrew Davidson**
Coughlin Stoia Geller Rudman &
Robbins LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
561-750-3000
Fax: 750-3364
Email: sdavidson@csgrr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sara Bertanowski**                    represented by    **Adam Mark Balkan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Shonson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack Reise**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Lee Davidson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Bledsoe Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John J. Stoia, Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Jeffrey Geller**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel L. Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart Andrew Davidson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anthony B White**                  represented by  **Adam Mark Balkan**
*as father of Samuel M. White on behalf*            (See above for address)
*of himself and all others similarly*               *LEAD ATTORNEY*
*situated*                                          *ATTORNEY TO BE NOTICED*

                                     **Elizabeth A. Shonson**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Jack Reise**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **James Lee Davidson**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **John Bledsoe Patterson**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **John J. Stoia, Jr.**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Paul Jeffrey Geller**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Rachel L. Jensen**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart Andrew Davidson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Moose Enterprise PTY LTD.
("MOOSE")**

**Defendant**

**Spin Master, LTD**    represented by    **Todd L. Wallen**
Shook Hardy & Bacon
201 S Biscayne Boulevard
Suite 2400
Miami, FL 33131-4332
305-358-5171
Fax: 305-358-7470
Email: twallen@shb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Spin Master, Inc.**    represented by    **Todd L. Wallen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Target Corp.**    represented by    **Todd L. Wallen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/09/2007 | 1 | COMPLAINT against all defendants Filing fee $ 350. Receipt#: 541499, filed by Sara Bertanowski, Simon Bertanowski.(dj) (Entered: 11/09/2007) |
| 11/15/2007 | 2 | Summons Issued as to Spin Master, LTD, Spin Master, Inc., Target Corp.. (ail) (Entered: 11/15/2007) |
| 11/16/2007 | 3 | Summons Issued as to Moose Enterprise PTY LTD.("MOOSE"). (ail) |

| | | |
|---|---|---|
| | | (Entered: 11/19/2007) |
| 11/30/2007 | 🌐4 | AFFIDAVIT of Service for SUMMONS, CLASS ACTION COMPLAINT AND CIVIL COVER SHEET served on SPIN MASTER, INC. REGISTERED AGENT on NOVEMBER 19, 2007, filed by Sara Bertanowski, Simon Bertanowski. (Shonson, Elizabeth) (Entered: 11/30/2007) |
| 11/30/2007 | 🌐5 | AFFIDAVIT of Service for SUMMOMS AND CLASS ACTION COMPLAINT served on TARGET CORPORATION, REGISTERED AGENT CT CORPORATION SYSTEM on NOVEMBER 19, 2007, filed by Sara Bertanowski, Anthony B White, Simon Bertanowski. (Shonson, Elizabeth) (Entered: 11/30/2007) |
| 11/30/2007 | 🌐6 | SUMMONS Returned Executed by Sara Bertanowski, Anthony B White, Simon Bertanowski. Spin Master, Inc. served on 11/19/2007, answer due 12/10/2007. **For Image please see DE # 4. (gp) (Entered: 12/03/2007) |
| 11/30/2007 | 🌐7 | SUMMONS Returned Executed by Sara Bertanowski, Anthony B White, Simon Bertanowski. Target Corp. served on 11/19/2007, answer due 12/10/2007. **For Image please see DE # 5. (gp) (Entered: 12/03/2007) |
| 12/03/2007 | 🌐8 | NOTICE of Instruction to Filer, NOTICE of Docket Correction: re 4 Affidavit of Service filed by Simon Bertanowski, Sara Bertanowski. ERROR: Wrong Event Selected; Instruction to Filer: In the future please select the proper Event found Under Service of Process; CORRECTED by Re-docketing it as: [6] Summons Returned Executed. (gp) (Entered: 12/03/2007) |
| 12/03/2007 | 🌐9 | NOTICE of Instruction to Filer, NOTICE of Docket Correction: re 5 Affidavit of Service filed by Simon Bertanowski, Sara Bertanowski, Anthony B White. ERROR: Wrong Event Selected; Instruction to Filer: In the future please select the proper Event found under Service of Process; CORRECTED by re-docketing it as: [7] Summons Returned Executed. (gp) (Entered: 12/03/2007) |
| 12/04/2007 | 🌐 | Notice of Undeliverable Mail re[8] Notice of Instruction to Filer,, Notice of Docket Correction,, [7] Summons Returned Executed filed by Simon Bertanowski,, Sara Bertanowski,, Anthony B White,, [6] Summons Returned Executed filed by Simon Bertanowski,, Sara Bertanowski,, Anthony B White,, [9] Notice of Instruction to Filer,, Notice of Docket Correction, Email returned for: John Bledsoe Patterson Resolved by: Called attorneys' office, Stephanie informed that the email address is correct. NEF was resent. (mc) (Entered: 12/04/2007) |
| 12/05/2007 | 🌐 | Notice of Undeliverable Mail re[8] Notice of Instruction to Filer,, Notice of Docket Correction,, [7] Summons Returned Executed filed by Simon Bertanowski,, Sara Bertanowski,, Anthony B White,, [6] Summons Returned Executed filed by Simon Bertanowski,, Sara Bertanowski,, Anthony B White,, [9] Notice of Instruction to Filer,, Notice of Docket Correction, Email returned for: Adam Mark Balkan Resolved by: Called attorneys' office, Ms. Coleen informed that the email address is correct. NEF was resent. (mc) (Entered: 12/05/2007) |

| | | |
|---|---|---|
| 12/05/2007 | ●10 | Unopposed MOTION for Extension of Time to File Response as to 1 Complaint by Spin Master, LTD, Spin Master, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order)(Wallen, Todd) (Entered: 12/05/2007) |
| 12/07/2007 | ●11 | Unopposed MOTION for Extension of Time to File Response as to 1 Complaint by Target Corp.. (Attachments: # 1 Text of Proposed Order Proposed Order)(Wallen, Todd) (Entered: 12/07/2007) |
| 12/11/2007 | ●12 | ORDER granting 10 Motion for Extension of Time to Respond ;Signed by Judge Adalberto Jordan on 12/10/2007. (bs) (Entered: 12/11/2007) |
| 12/11/2007 | ●13 | ORDER granting 11 Motion for Extension of Time to Respond ; Signed by Judge Adalberto Jordan on 12/10/2007. (bs) (Entered: 12/11/2007) |
| 01/08/2008 | ●14 | Unopposed MOTION for Extension of Time to File Response as to 13 Order on Motion for Extension of Time to File Response/Reply/Answer, 1 Complaint, 12 Order on Motion for Extension of Time to File Response/Reply/Answer by Spin Master, LTD, Spin Master, Inc., Target Corp.. (Attachments: # 1 Exhibit proposed order)(Wallen, Todd) (Entered: 01/08/2008) |
| 01/22/2008 | ●15 | ORDER granting 14 Motion for Extension of Time to Respond ;Signed by Judge Adalberto Jordan on 01/22/2008. (bs) (Entered: 01/22/2008) |
| 01/23/2008 | ●16 | Defendant's MOTION to Stay *All Proceedings Pending Transfer Decision By The Judicial Panel On Multidistrict Litigation* by Spin Master, LTD, Spin Master, Inc.. Responses due by 2/6/2008 (Wallen, Todd) (Entered: 01/23/2008) |
| 01/23/2008 | ●17 | MEMORANDUM OF LAW In Support Of 16 Motion To Stay *All Proceedings Pending Transfer Decision By The Judicial Panel On Multidistrict Litigation* by Spin Master, LTD, Spin Master, Inc.. (Wallen, Todd) **Modified to add linkage/relationship to Motion on 1/24/2008 (gp)**. (Entered: 01/23/2008) |
| 01/23/2008 | ●18 | NOTICE by Spin Master, LTD, Spin Master, Inc. re 17 Memorandum of Law, 16 Defendant's MOTION to Stay *All Proceedings Pending Transfer Decision By The Judicial Panel On Multidistrict Litigation Notice of Filing Moving Defendants' Motion For Consolidation And Transfer For Pretrial Proceedings Pursuant To 28 U.S.C. 1407, Moving Defendants' Brief in Support, Schedule Of Actions, And Certificate of Service* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D) (Wallen, Todd) (Entered: 01/23/2008) |
| 01/23/2008 | ●19 | Notice of Adoption by Target Corp. Related document:17 Memorandum of Law filed by Spin Master, LTD,, Spin Master, Inc.,, 16 Defendant's MOTION to Stay *All Proceedings Pending Transfer Decision By The Judicial Panel On Multidistrict Litigation* filed by Spin Master, LTD,, Spin Master, Inc., (Wallen, Todd) (Entered: 01/23/2008) |
| 01/24/2008 | ●20 | NOTICE of Docket Correction and Instruction to Filer: re 17 Memorandum of Law, filed by Spin Master, LTD,, Spin Master, Inc.,, |

| | | |
|---|---|---|
| | | ERROR: Wrong Event Selected; Instruction to Filer: In the future please select the proper Event: "Memorandum in Support" found under Responses and Replies.- Corrected by Adding relationship/linkage to Motion. (gp) (Entered: 01/24/2008) |
| 02/05/2008 | 21 | Unopposed MOTION for Extension of Time to File Response as to 16 Defendant's MOTION to Stay *All Proceedings Pending Transfer Decision By The Judicial Panel On Multidistrict Litigation AND INCORPORATED MEMORANDUM OF LAW* by Sara Bertanowski, Anthony B White, Simon Bertanowski. (Attachments: # 1 Text of Proposed Order)(Reise, Jack) (Entered: 02/05/2008) |
| 02/11/2008 | 22 | RESPONSE in Support re 16 Defendant's MOTION to Stay *All Proceedings Pending Transfer Decision By The Judicial Panel On Multidistrict Litigation* filed by Sara Bertanowski, Anthony B White, Simon Bertanowski. (Reise, Jack) (Entered: 02/11/2008) |
| 02/21/2008 | 23 | ORDER granting 21 Motion for Extension of Time to Respond ; Signed by Judge Adalberto Jordan on 02/20/2008. (bs) (Entered: 02/21/2008) |
| 02/26/2008 | 24 | ORDER granting 16 Motion to Stay ;Signed by Judge Adalberto Jordan on 02/25/2008. (bs) (Entered: 02/26/2008) |
| 04/08/2008 | | ***Set CMM Flag pursuant to Administrative Order 2007-68 (bb) (Entered: 04/08/2008) |
| 04/14/2008 | 25 | TRANSFER ORDER (Dated 04/09/2008) from Judicial Panel on Multidistrict Litigation transferring case to the Northern District of Illinois re: MDL # 1940 for consolidated pretrial proceedings pursuant to 28 USC 1407 and assigned to Judge David H. Coar. (Signed by John G. Heyburn II, Chairman)(de) (Entered: 04/14/2008) |
| 04/14/2008 | | ***Civil Case Terminated. (de) (Entered: 04/14/2008) |
| 04/17/2008 | 26 | CORRECTED TRANSFER ORDER (Dated 04/09/2008) from Judicial Panel on Multidistrict Litigation transferring case to the Northern District of Illinois re: MDL # 1940 for consolidated pretrial proceedings pursuant to 28 USC 1407 and assigned to Judge David H. Coar. (Signed by John G. Heyburn, II, Chairman)(de) (Entered: 04/17/2008) |
| 04/29/2008 | 27 | TRANSFER ORDER (Dated 04/09/2008) from Judicial Panel on Multidistrict Litigation transferring case to the Northern District of Illinois re: MDL # 1940 for consolidated pretrial proceedings pursuant to 28 USC 1407 and assigned to Judge David H. Coar. (Signed by John G. Heyburn, II, Chairman)?(de) (Entered: 04/29/2008) |
| 04/29/2008 | 28 | Clerks Note: Pursuant to the MDL Transfer Order, we are transferring the case to the Northern District of Illinois. The Northern District of Illinois will receive the requested PDF documents (complaint, certified docket sheet, and MDL Transfer Order) for the transfer of the case via electronic mail. (SDFL Case #07cv22941/NDIL Case #08cv2369)(de) (Entered: 04/29/2008) |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

SIMON BERTANOWSKI, SARA
BERTANOWSKI and ANTHONY B.
WHITE, as father of SAMUEL M.
WHITE, on behalf of himself and all
others similarly situated,

             Plaintiff(s),

vs.

MOOSE ENTERPRISE PTY LTD.
("MOOSE"), SPIN MASTER, LTD.,
SPIN MASTER, INC., AND TARGET
CORP.,

             Defendant(s).

Case No.

# 07-22941

## CIV-JORDAN

/ TORRES

FILED by _____ D.C.
INTAKE

NOV - 9 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

## CLASS ACTION COMPLAINT

Plaintiffs Simon Bertanowski, Sara Bertanowski and Anthony B. White, as father of Samuel

M. White, a minor, on behalf of himself and on all others similarly situated ("Plaintiffs"), hereby

commence this nationwide Class Action Complaint against Defendants Moose Enterprise Pty Ltd.

("Moose"), Spin Master, Ltd., Spin Master, Inc., and Target Corp. (collectively, "Defendants") for

compensatory, equitable, injunctive and declaratory relief. Plaintiffs make the following allegations

based upon knowledge as to their own acts, and upon information and belief, as well as upon their

attorneys' investigative efforts as to Defendants' actions and misconduct, and allege as follows:

### INTRODUCTION

1.     This is a nationwide class action brought on behalf of Plaintiffs and other consumers

similarly situated who, during the period April 1, 2007 through November 7, 2007 (the "Class

Period"), purchased or were exposed to certain children's toys that were manufactured and/or

distributed by Defendants and were recalled because the colorful Aqua Dots beads contain 1,4-

butanediol, an industrial solvent that the body converts into gamma-hydroxy butyrate ("GHB") upon ingestion. GHB is commonly known as the "date-rape" drug because of the depressive effects it has on the central nervous system.

2.     On November 7, 2007, Spin Master Ltd. initiated a recall of approximately 4.2 million Aqua Dots toy craft kits that were manufactured in China and sold during the period April 1, 2007 to November 7, 2007 ("Aqua Dots" or the "Toys"). In the recall notice dated November 7, 2007, Spin Master Ltd. stated that the Aqua Dots kits contain beads that when ingested can cause children to have seizures, develop respiratory depression and become comatose.

3.     Although Defendants have recalled these Toys because they are extremely dangerous to children, Defendants have not offered to reimburse Plaintiffs and the Class for the costs of the Toys. Rather, Defendants are only offering to replace the toxic beads with other beads or another toy. Defendants' offer fails to compensate Plaintiffs and the Class for their damages or make them whole.

4.     Aqua Dots were designed and manufactured by Defendant Moose, an Australian toy producer, in factories in China. Defendants Spin Master Ltd. and Spin Master, Inc. (together, "Spin Master") distributed, marketed, and sold the Toys to various retailers in the United States. Defendants designed, manufactured, marketed, advertised and warranted the Toys. In conjunction with each sale, Defendants marketed, advertised and warranted that the Toys were fit for the ordinary purpose for which such products were used – play toys for children – and were free from defects and hazardous substances. Defendants manufactured and distributed the Toys intending that parents, grandparents and other individuals would purchase the Toys for children to play with. The Toys marketed by Defendants are targeted for use by young children who frequently put toys and objects in their mouths.

5.      Under federal laws, toys or other articles intended for use by children that contain an accessible hazardous substance are banned because of the serious risk of harm they present. The absence or improper usage of quality-control measures and safety inspections by Defendants unreasonably exposed thousands of young children to toxins that can cause serious health problems and even death.

6.      The dangerous conduct of Defendants in manufacturing, marketing and/or distributing millions of children's toys containing toxins has reasonably caused anxiety and fear among parents and guardians of young children who have been exposed to the tainted Toys. GHB can cause children to become comatose, develop respiratory depression and have seizures. A high concentration of the chemical can damage the nervous system and cause death. Exposure to GHB in the recalled Toys through ingestion creates an extreme and unreasonable risk to young children. Plaintiffs and other members of the Class would not have purchased the Toys had they known such products were defective and contained unlawful hazardous substances.

7.      As a result of the defective and hazardous Toys manufactured and/or distributed by Defendants, Plaintiffs and other members of the Class have incurred damages, including, but not limited to, the purchase price of the Toys and the expense of returning the toxic Toys to Spin Master. Plaintiffs and the other members of the Class also seek equitable and injunctive relief, including a medical-monitoring program to detect and prevent serious injury associated with ingestion of the toxic chemicals contained in the Toys.

## PARTIES

8.      Plaintiff Anthony B. White ("Plaintiff" or "Plaintiff White") is the father of minor child Samuel M. White, a six year old boy. Plaintiff White brings this action on behalf of his son Samuel M. White. Plaintiff and his son reside in Florida.

3

9.     Plaintiffs Simon and Sara Bertanowski ("Plaintiffs" or the "Bertanowski Plaintiffs") are the grandparents of the minor child, Samuel M. White. During the Class Period, Plaintiffs Simon and Sara Bertanowski purchased Aqua Dots as a gift for their grandchild. They purchased the Toy at a Target Store in Miami, Florida. Plaintiffs Simon and Sara Bertanowski purchased the Toy for their grandchild to play with, and at the time they purchased the toy, were unaware that it contained chemicals that would become toxic if not lethal to their grandchild when ingested.

10.     Throughout this Complaint, Plaintiff White and Plaintiffs Simon and Sara Bertanowski will be collectively referred to as "Plaintiffs."

11.     Defendant Moose is an Australian company with its principal corporate office in East Bentleigh, Melbourne, Australia. Moose also maintains offices in Hong Kong, China and New York. Moose was founded in 1985 describes itself as "one of the top 10 toy distributors within Australia" and a "leader of innovative, quirky, fashion driven products designed to inspire and delight." Moose's principal activities are the design, manufacture and marketing of toys. Moose currently exports its toys to more than forty-five countries including the USA, UK, Italy, Spain, France, as well as many nations in Asia, Scandanavia and Eastern Europe. One of Moose's key export customers is Spin Master.

12.     Defendant Spin Master Ltd. is a Canadian company that was founded in 1994. Spin Master maintains its principal corporate office in Toronto, Canada but also has offices in New York, Paris, London, Hong Kong and China. Spin Master designs, develops, manufactures and markets consumer products for children around the world. Spin Master touts itself as "a dominant leader in the children's entertainment industry" and considers itself to be "ranked among the top 10 North American toy manufacturers." Spin Master is comprised of such brands as Air Hogs®™,

4

Aquadoodle™, Bella Dancerella, Black Belts, Bounce 'Round™, 7-11™ Slurpee Maker, and Moon Sand. Currently, Spin Master is one of the largest distributors of Moose Enterprise products.

13.     Defendant Spin Master, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 300 International Drive, Suite 300, Williamsville, New York 14221. Spin Master, Inc. distributes a wide variety of toys in the United States through interstate commerce and through nationwide retailers such as Target, Wal-Mart Stores, Inc. and Toys R' Us, Inc.

14.     Defendant Spin Master, Ltd. and its United States subsidiary Spin Master, Inc. will be collectively referred to as "Spin Master." During the Class Period Spin Master distributed, marketed and sold the Toys.

15.     Defendant Target is a Minnesota corporation with its principal executive offices in Minneapolis, Minnesota. Spin Master distributed and sold the recalled toys through Target during the relevant time period.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and the Class Action Fairness Act of 2005. The matter in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and some members of the class are citizens of states other than the states in which Defendants are incorporated and have their principal place of business. In addition, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state-law based claims. The Court also has personal jurisdiction over all of the Defendants because each of them is authorized to do business and has conducted business in this state.

17.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because one of the Defendants' principal corporate office is in this District and a substantial part of the events giving

rise to Plaintiff's claims occurred in this District, including the marketing, distribution and sale of the Toys.

## SUBSTANTIVE ALLEGATIONS

18.     On November 7, 2007, Defendants shocked parents and guardians of young children by announcing a recall of 4.2 million Aqua Dots toy craft kits. Aqua Dots is an arts and crafts toy kit which contains small, colored, liquid-filled beads which can be arranged in various multi-dimensional designs. The beads are approximately 5 millimeters in diameter and come in a wide range of colors. When they are sprayed with water, the beads become adhesive and fuse together on a plastic tray. Once the design becomes fixed, it can be removed from the tray. Aqua Dots are available in various different kits with accessories such as a drying fan, applicator pen, design template for beads and spray bottle. All models of Aqua Dots have been recalled.

19.     The Company, in cooperation with the United States Consumer Product Safety Commission ("CPSC"), recalled the Toys after reports that children who ingested the beads contained in the kit became seriously ill. The Aqua Dots beads are coated in 1,4-butanediol, which is an industrial solvent. When metabolized, the body converts this substance into GHB, also known as the "date rape" drug. This toxin can have serious effects in humans causing depression of the central nervous system, respiratory depression, unconsciousness, seizures, comas and even death. These effects are likely to be particularly magnified in small children. Spin Master has acknowledged the dangers of the Toys, stating in the recall notice that consumers should "immediately" take the recalled Toys away from children.

20.     Aqua Dots are manufactured in China by Moose and distributed throughout North America by Spin Master. Moose outsourced production of the Toys to a factory in Shenzhen, which is in the Guangdong province of China. The Toys were supposed to be manufactured with 1,5

pentanediol, which is a nontoxic compound found in glue, but instead 1,4-butanediol, a harmful toxin used in cleaners and plastics, was used. There is a significant price difference between the two chemicals that likely led to the substitution of 1,5-pentanediol with 1,4-butanediol. ChemNet China, the Chinese online trading platform, lists the price of 1,5-pentanediol as $9,700 per metric ton, while 1,4-butanediol costs only $1,350-$2,800 per metric ton, nearly a $7,000 difference.

21.     In Australia, the Toys were marketed and sold under the name "Bindeez Beads." Bindeez Beads, which were made in the same factory as Aqua Dots, were also recalled. On November 6, Moose recalled the entire Bindeez Beads toy line, which included twenty-two different products sold in Australia since December of 2006. The recall was initiated after some children swallowing the beads became unconscious and required medical attention.

22.     In the United States, the Toys were sold and distributed by toy stores and retailers from April 1, 2007 through November 7, 2007, when they were recalled by Spin Master. Spin Master provided little information regarding the recall, other than that the Toys were being recalled because the coating on the beads contains a chemical that could turn toxic when ingested and some of the serious effects they could have on children. Spin Master did not explain how the Toys came to be contaminated with 1,4-butanediol.

23.     In its recall notice, Spin Master offered to return the beads for free replacement beads or a toy of equal value. However, Spin Master has failed to provide refunds for the Toys, which range in price from $17 to as much as $30. Spin Master has also failed to offer to pay for any health-related problems associated with ingestion of the Aqua Dots beads.

24.     Aqua Dots are popular toys among young children. Indeed, until their recall, Aqua Dots topped the holiday "pick lists" of many major toy retailers. The Toys are labeled as being appropriate for children as young as four years of age. The Toys are favored by Plaintiffs' child,

who is six years old. Plaintiffs were not aware that the Toys were contaminated with chemicals that when metabolized become GHB. Plaintiffs Simon and Sara Bertanowski would not have purchased the Toy for their grandchild Samuel White had they known that the Toys would expose him to these toxins. Plaintiffs White would not have allowed his child to play with the Toy had he known of its danger.

25.    The Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §1261(f)(1), defines household products that are toxic as "hazardous substances." Toys that are intended for use by children and that contain a hazardous substance in such manner to be susceptible to access to children are automatically banned under 15 U.S.C. §1261(q).

26.    Defendants marketed the Toys as playthings safe for young children. Contrary to these representations, the Toys were laden with hazardous chemicals during the manufacturing process and sold and marketed by Defendants to children in violation of the FHSA, without adequate inspection or quality-control measures. These Toys are dangerous to children, and if ingested can causes damage to their neurological systems leading to unconsciousness, seizures, respiratory depression, comas and even death.

27.    Plaintiffs and other members of the Class were deceived by Defendants' representations that Aqua Dots were safe toys for children as young as four years of age and were shocked to learn that their children's beloved Toys were contaminated with GHB. Clearly, Plaintiffs and other members of the Class would not have purchased Aqua Dots had they known of the hidden dangers in the Toys.

## CLASS ACTION ALLEGATIONS

28.    Plaintiffs bring this nationwide class action individually and on behalf of others similarly situated as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs Anthony White brings this action on behalf of himself and as father and next friend of minor child Samuel White, and all members of a proposed Class, consisting of all persons who during the period April 1, 2007 through November 7, 2007, purchased and/or were exposed to the Toys that were manufactured and/or distributed by Defendants and were recalled because they are toxic when ingested. Upon completion of discovery with respect to the scope of the Class, Plaintiffs reserve the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

29.    <u>Numerosity</u>: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe and therefore avers that there are thousands of Class members throughout the United States. Indeed, Defendants distributed and potentially sold over 1 million tainted Toys throughout the United States.

30.    <u>Commonality</u>: There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, inter alia, the following:

(a)    Whether Defendants designed, manufactured, marketed and distributed toys that were recalled because they contain 1,4-butanediol which becomes the toxin GHB when ingested;

(b)    Whether Defendants advertised, represented or otherwise presented to the public toys that it manufactures, distributes and sells as safe and high quality;

(c)      Whether Defendants falsely represented or omitted information regarding the tainted Toys or their recall;

(d)      Whether Defendants engaged in unfair or deceptive trade practices;

(e)      Whether Defendants expressly warranted the Toys;

(f)      Whether Defendants purported to disclaim any express or implied warranties;

(g)      Whether Defendants intended for the Toys to be purchased by Plaintiffs, Class members, or other consumers for use by young children;

(h)      Whether Defendants were negligent in manufacturing the Toys;

(i)      Whether Defendants were negligent in conducting quality control or safety inspections prior to distributing and selling the Toys for use by young children;

(j)      Whether using the Toys as intended – for playthings by young children – resulted in loss, injury, and/or damages to Plaintiffs and to the Class members;

(k)      Whether Defendants' negligence proximately caused injury, loss or damages;

(l)      Whether exposure to the tainted Toys created an increased risk of serious health problems in young children; and

(m)      Whether an increased risk of serious health problems in young children mandates periodic medical examination for early detection of potential health problems related to exposure to 1,4-butanediol which becomes the toxin GHB when ingested;

31.      <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs Simon and Sara Bertanowski are grandparents who purchased the Toys from Defendants to which their grandchild has been exposed.  Plaintiff Anthony B. White is a parent of a child who has been exposed.  Defendants each and all failed to inspect for and disclose hazardous risks associated with the Toys and deprived Plaintiffs and other members of the Class from making

informed decisions prior to purchasing the tainted Toys for which Defendants have offered no refunds. Further, Plaintiffs' claims are typical of the other members of the Class because Plaintiffs seek equitable injunctive relief of court-ordered medical monitoring funded by Defendants to assist Plaintiffs and the Class members and their children who all suffer an increased risk of harm from exposure to 1,4-butanediol which becomes the toxin GHB when ingested, for which medical monitoring relief is appropriate. Plaintiffs and the Class as a whole will benefit from such relief as monitoring the health of children exposed to the tainted Toys can detect health problems caused by exposure to 1,4-butanediol which becomes the toxin GHB when ingested and prevent further injury. Plaintiffs also seek monetary damages for, among other things, the cost of purchasing the Toys.

32.    Adequacy:  Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

33.    Plaintiffs bring this action under Rule 23(b)(3) because common questions of law and fact (identified in paragraph 26 above) predominate over questions of law and fact affecting individual members of the Class.  Indeed, the predominant issue in this action is whether Defendants' products are defective and have caused damages to Plaintiffs and Plaintiff Anthony White's child and the members of the Class.  In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and  envisions no unusual difficulty in the management of this action as a class action.

34.     Certification of the Class is also appropriate, and the management of this action as a Class Action will not be difficult and will eliminate the risk of incompatible standards of conduct for Defendants and inconsistent or varying adjudications for all parties.

35.     The undersigned counsel for Plaintiffs and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned counsel will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

36.     Plaintiffs request this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## CLAIMS FOR RELIEF

## COUNT I

## Negligence

37.     Plaintiffs repeat and re-allege the allegations contained above as if fully set forth herein.

38.     Defendants designed, manufactured, sold and/or distributed the Toys to parents, guardians and other consumers of children's toys.

39.     Defendants owed Plaintiffs and other members of the Class a duty to offer safe, non-hazardous toys, including a duty to exercise reasonable care to assure that the Toys did not contain hazardous substances such as 1,4-butanediol which becomes the toxin GHB when ingested.

40.     Through their failure to exercise due care, Defendants breached this duty by designing, manufacturing, selling and/or distributing the Toys in a defective condition that was unsafe for children and exposed them to GHB and which is a hazardous substance.

41.     Defendants also breached their duty of care to Plaintiffs and other members of the Class by failing to use sufficient safety inspections and quality-control measures; failing to use proper manufacturing, production and processing; and failing to take sufficient measures to prevent the Toys from being offered for sale to parents, guardians and other gift-givers of children.

42.     Defendants knew or, in the exercise of reasonable care, should have known that the Toys presented an unacceptable risk to Plaintiff's child and other members of the Class and would result in damage that was foreseeable and reasonably avoidable.

43.     As a direct and proximate result of Defendants' negligence, Plaintiffs and other members of the Class have suffered loss and damages.

## COUNT II

### Breach of Implied Warranty of Merchantability

44.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

45.     Defendants sold and promoted their Toys and placed them into the stream of commerce. Defendants knew or had reason to know of the specific use for which the Toys were purchased and impliedly warranted that their Toys were of merchantable quality and fit for such use.

46.     Plaintiffs and the Class Members reasonably relied upon the expertise, skill judgment, and knowledge of Defendants and upon its implied warranty that their Toys were of merchantable quality and fit for the intended use.

47. Defendants knew, should have known, or had reason to know that Plaintiffs and the Class Members were influenced to approve and purchase their children's Toys because of Defendants' expertise, skill, judgment, and knowledge in furnishing their Toys for that use.

48. Defendants' Toys were not of merchantable quality and were not fit for their intended use, because they contained substances dangerous to humans, especially small children.

49. Defendants breached the implied warranty that their Toys were of merchantable quality and fit for such use in violation of:

    (a)    Ala. Code § 7-2-314, et seq.

    (b)    Alaska Si. § 45.02.314, et seq.

    (c)    Ariz. Rev. Stat. Ann. § 47-2314, et seq.

    (d)    Ark. Code Ann. § 4-2-314, et seq.

    (e)    Cal. Comm. Code § 2314, et seq.

    (f)    Co. Rev. St. §4-2-314, et seq.

    (g)    Conn. Gen. Stat. Ann. § 42a-2-314, et seq.

    (h)    6 Del. C. § 2-314, et seq.

    (i)    D.C. Code § 28:2-314, et seq.

    (j)    Fla. Stat. Ann. § 672.314, et seq.

    (k)    Ga. Code. Ann. § 11-2-314, et seq.

    (l)    Haw. Rev. Stat. § 490:2-314, et seq.

    (m)    Id. Code § 28-2-314, et seq.

    (n)    Ill. Comp. Stat. Ann. Ch. 810, 5/2-314, et seq.

    (o)    Ind. Code Ann. § 26-1 -2-314, et seq.

    (p)    Iowa Code Ann. § 554.2314, et seq.

(q)     Kansas Stat. Ann. § 84-2-314, et seq.

(r)     Ken. Rev. Stat. Ann. § 355.2-3 1 4, et seq.

(s)     La. Civ. Code Ann. Art. 2520, et seq.

(t)     Maine Rev. Stat. Ann. § 2-314, et seq.

(u)     Md. Code Ann., Com. Law § 2-314, et seq.

(v)     Mass. Gen. Laws Ann. Ch. 106 § 2-314, et seq.

(w)     Mich. Comp. Laws Ann. § 440.2.314, et seq.

(x)     Minn. Stat. Ann. § 336.2-314, et seq.

(y)     Miss. Code Ann. § 75-2-314, et seq.

(z)     Missouri Rev. Stat. § 400.2-314, et seq.

(aa)    Mont. Code Ann. § 30-2-314, et seq.

(bb)    Nev. Rev. Stat. U.C.C. § 104.2314, et seq.

(cc)    N.H. Rev. Stat. Ann. § 382-A:2-314, et seq.

(dd)    N.J. Stat. Ann. § 12A:2-314, et seq.

(ee)    N.M. Stat. Ann, § 55-2-314, et seq.

(ff)    N.Y. U.C.C. Law 2-314, et seq.

(gg)    N.C. Gen. Stat. Ann. § 25-2-314, et seq.

(hh)    N.D.Stat. § 41-02-314, et seq.

(ii)    Ohio Rev. Code Ann. § 1302.27, et seq.

(jj)    12A Okla. Stat. § 2-314, et seq.

(kk)    Or. Rev. Stat. § 72.3140, et seq.

(ll)    13 Pa. Stat. Ann. §2314, et seq.

(mm)    R.I. Gen. Laws § 6A-2-314, et seq.

(nn)   S.C. § 36-2-314, et seq.

(oo)   S.D. Stat. 57A-2-314, et seq.

(pp)   Tenn. Code Ann. § 47-2-314, et seq.

(qq)   Tex. Bus. & Com. Code Ann. § 2.314, et seq.

(rr)   Ut. Code Ann. § 70A-2-314, et seq.

(ss)   Va. Code Ann. § 8.2-314, et seq.

(tt)   Vt. Stat. Ann. § 9A-2-314, et seq.

(uu)   Wa. Rev. Code § 62A.2-314, et seq.

(vv)   W.Va. Code § 46-2-314, et seq.

(ww)   Wis. Stat. Ann. § 402.314, et seq.

(xx)   Wyo. Stat. §34.1-2-314, et seq.

50.     As a proximate cause of Defendants' breach of warranty, Plaintiffs and the Class suffered ascertainable losses, injuries, and damages as specified herein in an amount, to be determined at trial.

## COUNT III

### Breach of Express Warranty

51.     Plaintiffs repeat and re-allege the allegations contained above as if fully set forth herein.

52.     Defendants designed, manufactured, sold and/or distributed the Toys to parents, guardians and other consumers of children's toys.

53.     At the time that Defendants designed, manufactured, sold and/or distributed the Toys, Defendants knew the purpose for which the Toys were intended and expressly warranted that the Toys were safe and fit for use as play toys by young children.

54.     Plaintiffs and other members of the Class relied upon the skill, superior knowledge and judgment of the Defendants to sell toys that were reasonably safe for use by young children. Plaintiffs could not have known about the risks associated with the Toys until after Defendants issued a public notice recalling the Toys announcing that the toys were not safe or fit for their ordinary purpose and intended use and were not free of manufacturing defects, but instead contained toxins, that when ingested metabolize into GHB which is extremely dangerous to young children.

55.     Defendants breached their express warranties in connection with the sale of the Toys to Plaintiffs and other members of the Class.

56.     As a direct and proximate result of Defendants breach of express warranties, Plaintiffs and other members of the Class have suffered damages, including, but not limited to, an increased risk of serious health problems.

## COUNT IV

### Negligence and Breach of Express and Implied Warranties for Purposes of Establishing Medical Monitoring

57.     Plaintiffs repeat and re-allege the allegations contained above as if fully set forth herein.

58.     Defendants designed, manufactured, sold and/or distributed the Toys to parents, guardians and other consumers of children's toys.

59.     At the time that Defendants designed, manufactured, sold and/or distributed the Toys, Defendants knew the purpose for which the Toys were intended and impliedly and expressly warranted that the Toys were safe and fit for use as play toys by young children.

60.     Defendants owed Plaintiffs and other members of the Class a duty to offer safe, non-hazardous toys, including a duty to exercise reasonable care to assure that the Toys did not contain hazardous substances.

61.     Through their failure to exercise due care, Defendants breached this duty by designing, manufacturing, selling and/or distributing the Toys in a defective condition that was unsafe for children and exposed them to 1,4-butanediol which becomes the toxin GHB when ingested and which is a hazardous substance.

62.     Defendants also breached their duty of care to Plaintiffs and other members of the Class and breached their warranties by failing to use sufficient safety inspections and quality-control measures; failing to use proper manufacturing, production and processing; and failing to take sufficient measures to prevent the Toys from being offered for sale to parents, guardians and other gift-givers of children.

63.     Defendants knew or, in the exercise of reasonable care, should have known that the Toys presented an unacceptable risk to children of Plaintiffs and other members of the Class and would result in damage that was foreseeable and reasonably avoidable.

64.     Plaintiffs and other members of the Class relied upon the skill, superior knowledge and judgment of the Defendants to sell toys that were reasonably safe for use by young children. Plaintiffs could not have known about the risks associated with the Toys until after Defendants issued a public notice recalling the Toys announcing that the Toys were not safe or fit for their ordinary purpose and intended use and were not free of manufacturing defects, but instead were potentially laden with 1,4-butanediol which becomes the toxin GHB when ingested and which is a hazardous substance because of its extreme danger to young children.

65.     Defendants breached their implied and express warranties in connection with the sale of the Toys to Plaintiffs and other members of the Class.

66.     As a direct and proximate result of Defendants' breach of duty and express and implied warranties, Plaintiffs and other members of the Class have suffered damages, including, but

18

not limited to, an increased risk of serious health problems for which periodic medical examination are reasonable and necessary. Medical monitoring is, to a reasonable degree of medical certainty, necessary to detect and diagnose any warning signs and other serious health concerns such as depression of the central nervous system, leading to serious, long-term health problems.

67.     Defendants should be required to establish and fund a medical monitoring program to pay for the monitoring of Plaintiff Anthony White's child and all other members of the Class who were exposed to the Toys, and further should be required to notify all members of the Class that children exposed to the Toys require periodic medical testing for adverse effects associated with exposure to GHB.

68.     Plaintiffs and other members of the Class have no adequate remedy at law for which monetary damages alone can compensate them for the risk of physical harm due to the exposure of their children to 1,4-butanediol which becomes the toxin GHB when ingested, on the Toys. Without a Court-ordered and supervised medical monitoring program funded by Defendants, Plaintiffs and other members of the Class will continue to face serious health problems.

## COUNT V

### Strict Liability: Failure to Warn

69.     Plaintiffs repeat and re-allege the allegations contained above as if fully set forth herein.

70.     At all relevant times, Defendants were producers, manufacturers and/or distributors of the Toys.

71.     The Toys produced, manufactured and/or distributed by Defendants were defective in design or formulation in that, when the Toys left the hands of the Defendants they contained toxins that could cause adverse health effects to young children who ingested the toxic substance.

72.     Defendants knew or should have known that the Toys contained a non-obvious danger in the coating of the Aqua Dots beads. However, Defendants failed to inform Plaintiffs and the members of the Class as to the adverse health effects that the Toys could have on young children.

73.     Had Plaintiffs and members of the Class been warned about the adverse health effects that the Aqua Dots beads in the Toys posed to their children, they would not have purchased the Toys.

74.     As a direct and proximate result of the Defendants' failure to warn Plaintiffs and members of the Class about defective and unreasonably dangerous condition of the Toys manufactured and/or supplied by Defendants, Plaintiffs and members of the Class have suffered economic damages, as well as a significantly increased risk of their children sustaining a range of health effects, from comas, respiratory depression, neurological damage, seizures and death.

## COUNT VI

### Violations of Consumer Protection Laws

75.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth here and further allege as follows.

76.     Defendants have a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of the Toys.

77.     Had the Defendants not engaged in the deceptive conduct described above, Plaintiffs would not have purchased and/or paid for the defective Toys, and would not have incurred related medical costs.

78.     Defendants' deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiff, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below.

79.     Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiffs for the defective Toys that he would not have paid had Defendants not engaged in unfair and deceptive conduct.

80.     Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of state consumer protection statutes, as listed below:

    (a)     the Alaska Unfair Trade Practices And Consumer Protection Act, AS § 45.50.471 et seq.;

    (b)     the Arizona Consumer Fraud Act, A.R.S §§ 44-1521 et seq.;

    (c)     the Arkansas Deceptive Trade Practices Act. Ark. Code §§4-88-101 et seq,;

    (d)     the California Unfair Competition Law, Bus. & Prof Code §§ 17200, et seq. and 17500, et seq.;

    (e)     the California Consumers Legal Remedies Act, Civil Code § 1750, et seq.;

    (f)     the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101, et seq.;

    (g)     the Connecticut Unfair Trade Practices Act. C.G.S.A. § 42-110, et seq.;

    (h)     the Delaware Consumer Fraud Act, 6 Del. C. § 2513., et seq.;

    (i)     the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, et seq.;

    (j)     the Florida Deceptive And Unfair Trade Practices Act, FSA § 501.201, et seq.;

    (k)     the Georgia Fair Business Practices Act, OCGA § 10-1-390, et seq.;

    (l)     the Hawaii Unfair Competition Law, H.R.S. § 480-2, et seq.;

    (m)     the Idaho Consumer Protection Act, I.C. § 48-601, et seq.;

(n)     the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 et seq.;

(o)     the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, et seq.;

(p)     the Kansas Consumer Protection Act, K.S.A. § 50-623, el seq.;

(q)     the Kentucky Consumer Protection Act, KRS 367.1 10, et seq.;

(r)     the Louisiana Unfair Trade Practices And Consumer Protection Law, LSA-R.S. 51:1401, et seq.;

(s)     the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, et seq.;

(t)     the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, et seq.;

(u)     the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, et seq.;

(v)     the Michigan Consumer Protection Act, M.C.L.A. 445.901, et seq;

(w)     the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

(x)     the Missouri Merchandising Practices Act, V.A.M.S. § 407, et seq.;

(y)     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, et seq.;

(z)     the Nevada Deceptive Trade Practices Act, N.R.S, 41.600, et seq.

(aa)    the New Hampshire Regulation of Business Practices For Consumer Protection, N.H.Rev.Stat. § 358-A:l, et seq.;

(bb)    the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, et seq.;

(cc)    the New Mexico Unfair Practices Act, N.M.S.A. 1978 §§ 57-12-1, et seq.;

(dd)    the New York Consumer Protection from Deceptive Acts and Practices, GBL § 349, et seq.;

(ee) the North Carolina Unfair And Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;

(ff) the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51 -15, et seq.;

(gg) the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq.;

(hh) the Oklahoma Consumer Protection Act, 15 O.S.2001,§§ 751, et seq.;

(ii) the Oregon Unlawful Trade Practices Act, ORS 646.605, et seq.;

(jj) the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;

(kk) the Rhode Island Deceptive Trade Practices Act, G.L.1956 §6-13.1-5.2(B). et seq.;

(ll) the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, et seq.;

(mm) the South Dakota Deceptive Trade Practices and Consumer Protection, SDCL § 37-24-1, et seq.;

(nn) the Tennessee Consumer Protection Act. T.C.A. § 47-18-101, et seq.;

(oo) the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, et seq.;

(pp) the Utah Consumer Sales Practices Act, UT ST § 13-11-175, et seq.;

(qq) the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

(rr) the Virginia Consumer Protection Act of 1977. VA ST §59.1-199, et seq.;

(ss) the Washington Consumer Protection Act, RCWA 19.86.01.0, et seq.;

(tt)     the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A, et seq.;

(uu)     the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, et seq.; and

(vv)     the Wyoming Consumer Protection Act, WY ST § 40-12-101, et seq.

81.     The acts, practices, misrepresentations and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes,

82.     Defendants' acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived or damaged Plaintiffs and members of the Class in connection with the sale or advertisement of the Toys. Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged in violation of each of the above-enumerated statutes.

83.     Plaintiffs, on behalf of themselves and the other Class members, seek monetary damages, treble damages and such other and further relief as set forth in each of the above-enumerated statutes.

## COUNT VII

### Strict Products Liability

84.     Plaintiffs, on behalf of themselves and all others similarly situated, re-allege the allegations contained in the foregoing paragraphs.

85.     At all relevant times, Defendants were producers, manufacturers and/or distributors of Toys.

86.     The Toys produced, manufactured and/or distributed by Defendants were unreasonably dangerous in that, when the Toys left the hands of the Defendants they contained 1,4-butanediol, which transforms into GHB when ingested and can cause adverse health effects in young children exposed to that toxic substance.

87.     Defendants' products were expected to and did reach Plaintiffs and members of the Class without substantial change in condition.

88.     As a direct and proximate result of the defective and unreasonably dangerous condition of the Toys, as produced, manufactured and/or supplied by Defendants, Plaintiffs and members of the Class have suffered direct economic loss, as well as a significantly increased risk of their children sustaining a range of health effects, from unconsciousness to seizures, coma and death.

### COUNT VIII

### Unjust Enrichment

89.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth here.

90.     At all times relevant hereto, Defendants designed, manufactured, produced, marketed and/or sold the Toys that contained 1,4-butanediol, which transforms into GHB when ingested.

91.     Plaintiffs and members of the Class conferred upon Defendants, without knowledge that the Toys have had their young children exposed to adverse health effects resulting from

exposure to 1,4-butanediol, which transforms into GHB when ingested, payment for such toys, and benefits that were non-gratuitous.

92.     Defendants appreciated, or had knowledge of the non-gratuitous benefits conferred upon them by Plaintiffs and members of the Class.

93.     Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing. Plaintiffs and. members of the Class were not receiving products of high quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected. Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

94.     Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in. a manner established by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate sub-classes, and appointing Plaintiffs and their legal counsel to represent the Class;

B.     Awarding actual, compensatory and consequential damages, including an amount to fund reasonable costs of medical monitoring for the Class;

C.     Awarding punitive and treble damages as provided under relevant laws;

D.     Granting equitable and injunctive relief to establish a medical-monitoring program;

E.     Awarding costs, including experts' fees, and attorneys' fees and expenses and the costs of prosecuting this action; and

F.     Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiffs and the Class demand a jury trial on all issues triable by a jury.

Dated: November 9, 2007

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

*Elizabeth A. Shonson*

PAUL J. GELLER
JACK REISE
STUART A. DAVIDSON
JAMES L. DAVIDSON
ELIZABETH A. SHONSON
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

JOHN J. STOIA, JR.
RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

**BALKAN & PATTERSON, LLP**
ADAM BALKAN
JOHN PATTERSON
601 S. Federal Hwy, Suite 302
Boca Raton, FL 33432
Telephone: 561/750-9191
561/750-1574 (fax)
***Attorneys for Plaintiffs***

**JS 44 (Rev. 11/04)**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

SIMON BERTANOWSKI, SARA BERTANOWSKI and ANTHONY B. WHITE, as father of SAMUEL M. WHITE, on behalf of himself and all others similarly situated,

## DEFENDANTS

MOOSE ENTERPRISE PTY LTD. ("MOOSE"), SPIN MASTER, LTD., SPIN MASTER, INC., and TARGET CORP.

**(b)** County of Residence of First Listed Plaintiff **Miami-Dade County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: 561/750-3000

**CIV-JORDAN**

Attorney (If Known)

**07-22941**

/TORRES

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

1:07CV 22941-Jordan-
Torres

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

FILED by __ D.C.
INTAKE

NOV - 9 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE ____ DOCKET NUMBER ____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. §1332. Class action for damages in connection with marketing and sale of defective products alleging negligence, breach of warranty, consumer fraud and violating Consumer Product Safety Act 15 U.S.C. §2072

LENGTH OF TRIAL via **10** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ ____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD    *Elizabeth A. Shonson*    11/9/07

FOR OFFICE USE ONLY

AMOUNT **350°°** RECEIPT # ____ IFP ____

**541499**